**UNITED STATES of America v. MEYER et al.**

et al.

Nos. 7148, 7149.

Circuit Court of Appeals, Seventh Circuit.

June 12, 1940.

Rehearing Denied July 23, 1940.

Ford W. Thompson, of St. Louis, Mo., for appellants.

Norman M. Littell, Asst. Atty. Gen., Daniel F. Steck, Sp. Asst. Atty. Gen., of Ottumwa, Iowa, and Andrew J. Murphy, Jr., Sp. Asst. Atty. Gen., of Davenport, Iowa, and Charles R. Denny, Jr., and Francis Hoague, Attys. Department of Justice, both of Washington, D. C., for appellee.

Russell R. Casteel, of East Alton, Ill., and Henry Davis, of St. Louis, Mo., amici curiæ.

Before SPARKS, and TREANOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendants appeal from a judgment in their favor for $66,750, entered in a proceeding to condemn certain of their lands for use in connection with the dam on the Mississippi River known as Lock and Dam No. 26. Adequate disposition of the several numerous errors assigned necessitates a somewhat extended comment upon the pertinent facts. Consequently, we shall avoid repetition necessarily entailed by a separate statement of facts.

Upon both the hearing upon their motion to dismiss and the trial, defendants questioned the authority of the Government to condemn the fee simple title to the lands involved. The petition of the Government for condemnation was filed pursuant to the Act of August 30, 1935, 49 Stat. 1028, 1034, 1035, specifically providing for the improvement, and the Rivers and Harbors Act of April 24, 1888, c. 194, 25 Stat. 94, 33 U.S. C. § 591, 33 U.S.C.A. § 591, which empowers the Secretary of War to institute proceedings in the name of the United States for the "acquirement by condemnation of any land, right of way, or material needed to enable him to maintain, operate or prosecute works for the improvement of rivers and harbors for which provision has been made by law." The power thus granted is unlimited and we cannot read into it limitations not clearly indicated by Con-

gress. The fact that, in discussing the legislation providing for improvements including the dam here concerned, members of Congress and other Government officials referred to the cost of "flowage," "flowage damages" and "flowage easements" does not persuade us that Congress by the later act intended to limit in any manner the power previously granted to the Secretary to acquire the fee simple title for any authorized purpose when deemed necessary. If Congress had intended in the original act to curtail the wide powers of the Secretary therein granted, it would necessarily have employed phraseology other than that adopted,—"any land, right of way * * * needed to enable him to maintain, operate or prosecute works * * * for which provision has been made by law." The act clearly conferred upon the Secretary of War authority to condemn any land needed for projects authorized by Congress.

■ Defendants insist that a fee simple title was not necessary to accomplish the purposes contemplated by the legislation. But the power to decide whether such a title was needed is, by the legislation, conferred upon the Secretary and, in the absence of bad faith or abuse of discretion, such determination is not subject to judicial review. Rindge Co. v. County of Los Angeles, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186; Joslin Manufacturing Co. v. City of Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167; Sears v. City of Akron, 246 U.S. 242, 38 S.Ct. 245, 62 L. Ed. 688; Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135. Determination of the extent, amount or title of property to be taken, by an Administrative Department, is, in the absence of bad faith, final. Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170; Sears v. City of Akron, 246 U.S. 242, 38 S.Ct. 245, 62 L. Ed. 688; United States v. Gettysburg Electric Railway Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576; Barnidge v. United States, 8 Cir., 101 F.2d 295; United States v. Threlkeld, 10 Cir., 72 F.2d 464; certiorari denied, 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708; 2 Cooley, Constitutional Limitations (8th Ed.1927), pp. 1145–1147; 1 Lewis, Eminent Domain (3d Ed.1909), sec. 370, p. 677. The decision as to such questions rests wholly in legislative discretion, subject only to the restraints that just compensation must be paid and the determination made in good faith.

■ Defendants' position further, however, is that the Secretary's action was not characterized by good faith but amounted to an abuse of his discretion, for the reason that a title in fee simple was not in fact necessary for the accomplishment of the purposes of the project. To substantiate this proposition they offered in evidence a letter from the Chief of Engineers of the War Department to Senator Lewis in which, in · discussing the project, the writer indicated that in the pools of the lower reaches of the improvement, some of the lands to be acquired would no doubt be desired for development of parks and recreational facilities and stated that most of the land would be permanently under water, and that, in the interest of the users of the resulting pools for navigation, recreation and police of their shores, it was considered desirable for the Federal Government to obtain more than a flowage easement and that, therefore, a fee simple title should be acquired. It should be observed first that the letter was incompetent as evidence, for the reason that it was not written by the official who had the burden of determining the question of necessity but by a subordinate agent with whom the Secretary may or may not have agreed. The opinions of such third persons are of no avail to impeach the integrity of the responsible official. Moreover, nothing in this document impeaches the original purpose, namely, betterment of navigation and flood control. Old Dominion Land Co. v. United States, 4 Cir., 296 F. 20, affirmed 269 U.S. 55, 46 S.Ct. 39, 70 L.Ed. 162. The evidence in the record, including that tendered by defendants, tends to disclose only a 'difference in judgment as to the necessity of a fee simple title,—nothing in the way of abuse of discretion. Furthermore in their cross-complaint defendants averred that the possession of the Government "would completely destroy" the lands "by the operation of the dam." If there was a complete taking or destruction of defendants' property, it would seem obvious that a fee simple title was requisite.

■ Defendants insist that by the order for immediate possession, their constitutional rights were violated. Congress by the Act of May 15, 1936, 49 Stat. 1278, 1306, appropriated some $150,000,000 to be expended under the direction of the Secretary of War to develop such previously authorized projects as might be desirable

in the interests of commerce and navigation. When the petition was filed and presented to the court, it was accompanied by a letter of the Secretary to the effect that funds were then available for paying such awards as should be allowed in condemnation proceedings for these purposes. The court evidently relied upon this in determining the correctness of the Secretary's finding and found that the preliminaries required by the Act of July 18, 1918, c. 155, sec. 5, 40 Stat. 904, 911, 33 U.S.C. § 594, 33 U.S.C.A. § 594, had been complied with. This was the correct action. In re Military Training Camp, D.C., 260 F. 986. It was not necessary that funds for satisfaction of the awards be deposited in advance of the taking. The statute does not so provide but rather authorizes immediate possession when "certain and adequate provision shall have been made for the payment of just compensation to the party or parties entitled thereto, either by previous appropriation by the United States or by the deposit of moneys or other form of security in such amount and form as shall be approved by the court in which such proceedings shall be instituted." 33 U.S. C. sec. 594, 33 U.S.C.A. § 594. The requirement of the Fifth Amendment is that just compensation shall be paid for property taken but that does not mean that the funds must be deposited prior to taking. Appropriation by Congress furnishes adequate security. Commercial Station Post Office v. United States, 8 Cir., 48 F. 2d 183. Where Congress has authorized an appropriation for a sum of money, that appropriation is back of the obligation to pay for whatever is taken in pursuance of such authorized purpose. Hurley v. Kincaid, 285 U.S. 95, 104, 52 S.Ct. 267, 76 L.Ed. 637; Crozier v. Fried. Krupp Aktiengesellschaft, 224 U.S. 290, 306, 32 S.Ct. 488, 56 L.Ed. 771; Joslin v. City of Providence, 262 U.S. 668, 678, 43 S.Ct. 684, 67 L.Ed. 1167; Hays v. Port of Seattle, 251 U.S. 233, 238, 40 S.Ct. 125, 64 L.Ed. 243; Bragg v. Weaver, 251 U.S. 57, 62, 40 S.Ct. 62, 64 L.Ed. 135; Williams v. Parker, 188 U.S. 491, 502, 503, 23 S.Ct. 440, 47 L.Ed. 559; Adirondack Railway Co. v. State of New York, 176 U.S. 335, 349, 350, 20 S.Ct. 460, 44 L.Ed. 492; Sweet v. Rechel, 159 U.S. 380, 404, 16 S. Ct. 43, 40 L.Ed. 188; Cherokee Nation v. Southern Kansas Railway Co., 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295; Backus v. Fort Street Union Depot Co., 169 U.S. 557, 568, 569, 18 S.Ct 445, 42 L.Ed. 853.

Furthermore, where taking results from authorized acts of agents of the United States, it is to be considered as an exercise of eminent domain by the Government for which just compensation can be recovered under the Tucker Act, 28 U.S.C.A. § 41 (20). United States v. Lynah, 188 U.S. 445, 465, 23 S.Ct. 349, 47 L.Ed. 539; Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637; Crozier v. Fried. Krupp Aktiengesellschaft, 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771; Tilden v. United States, D.C., 10 F.Supp. 377.

Defendants insist further that when the court entered the order of immediate possession, it thereby gave the Government the right to flood the land and that thereby, they were deprived of their property in violation of their constitutional right, under the Fifth and Seventh Amendments, to a jury trial in assessing damages. The flooding, they say, took from them the right to have a jury view the land taken. The premise of a right to a jury trial, however, is fallacious. When we adopted the Seventh Amendment, guaranteeing the right of trial by jury, it had long been the law in England as well as in America that determination of the amount of an award to be made in an eminent domain proceeding might be referred to a nonjudicial tribunal. Crane v. Hahlo, 258 U.S. 142, 42 S.Ct. 214, 66 L.Ed. 514. A jury trial as at common law preserved by the Constitution is not guaranteed in such proceedings. United States v. Kenesaw Mountain Battlefield Ass'n, 5 Cir., 99 F.2d 830, certiorari denied 306 U.S. 646, 59 S.Ct. 587, 83 L.Ed. 1045; United States v. Jones, 109 U.S. 513, 519, 3 S.Ct. 346, 27 L.Ed. 1015; Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170; Bauman v. Ross, 167 U.S. 548, 593, 17 S.Ct. 966, 42 L.Ed. 270; United States v. Hess, 8 Cir., 71 F.2d 78, 80; Great Falls Mfg. Co. v. Garland, C.C.D.Md., 25 F. 521, affirmed 124 U.S. 581, 8 S.Ct. 631, 31 L.Ed. 527; Federal Condemnation Proceedings and the Seventh Amendment (1927), 41 Harv.L.Rev. 29. And for the same reason, the Fifth Amendment does not guarantee a jury trial in such cases. Dohany v. Rogers, 281 U.S. 362, 369, 50 S.Ct. 299, 74 L.Ed. 904, 68 A. L.R. 434; Crane v. Hahlo, 258 U.S. 142, 147, 42 S.Ct. 214, 66 L.Ed. 514; Bauman v. Ross, 167 U.S. 548, 593, 17 S.Ct. 966, 42 L.Ed. 270; United States v. Jones, 109 U. S. 513, 519, 3 S.Ct. 346, 27 L.Ed. 1015; Walker v. Sauvinet, 92 U.S. 90, 92, 23 L.

Ed. 678; United States v. Hess, 8 Cir., 71 F.2d 78; Great Falls Mfg. Co. v. Garland, C.C.D.Md., 25 F. 521, affirmed 124 U.S. 581, 8 S.Ct. 631, 31 L.Ed. 527. Furthermore, under the law of Illinois, a view of the premises by the jury is not a necessary element of a trial by jury in a condemnation cause but its allowance lies within the discretion of the court. Humphreys & Co. v. City of Bloomington, 246 Ill.App. 334, 341; Rich v. City of Chicago, 187 Ill. 396, 398, 58 N.E. 306; Vane v. City of Evanston, 150 Ill. 616, 622, 37 N.E. 901; Louisville & N. R. Co. v. Western Union Telegraph Co., 6 Cir., 249 F. 385, certiorari denied 248 U.S. 576, 39 S.Ct. 18, 63 L.Ed. 428, 429; Murhard Estate Co. v. Portland & Seattle R. Co., 9 Cir., 163 F. 194; Forbes v. United States, 5 Cir., 268 F. 273.

Defendants complain that, although the petition recited that there had been an unsuccessful attempt by the Government to acquire the property by purchase, such was not a fact, and, consequently, that event being a condition precedent to acquisition of title by condemnation, the Government's proof was defective and its right to succeed, defeated. But the record is silent as to evidence of the title of defendants. Consequently, we must rely upon the court's order finding that title in at least one tract was based on adverse possession, thus creating a question as to whether defendants had and could convey good marketable title.

 Irrespective of this, however, it was unnecessary for the Government to attempt to purchase the land. The Illinois Act imposes as a condition precedent to the creation of the right of condemnation, an attempt to purchase, but this is a matter of substantive law and goes to the existence of the cause of action; it is not a procedural rule by which under the Conformity Act, 28 U.S.C.A. § 724, the District Court was bound. United States v. Eighty Acres of Land, D.C., 26 F.Supp. 315; In re Secretary of Treasury of United States, C.C., 45 F. 396, 399, 11 L.R.A. 275; United States v. Crary, D.C., 1 F.Supp. 406; In re Condemnations for Improvement of Rouge River, D.C., 266 F. 105; Kanakanui v. United States, 9 Cir., 244 F. 923, 925; United States v. Oregon Ry. & Nav. Co., C.C., 16 F. 524, 528. When as here, the United States is the condemning party, its power to take the property is not limited by any condition precedent such as the duty to endeavor to purchase the property. In re Condemnations for Improvement of Rouge River, D.C., 266 F. 105. The averment of inability to agree with defendants contained in the petition, being mere surplusage, was properly disregarded by the District Court.

 Defendants insist that they should have been permitted to prosecute and succeed upon their answer, which included a prayer for affirmative relief in the form of an injunction to restrain government officials from taking possession of the land. The procedure governing condemnation suits in Illinois, by which under the Conformity Act the District Court was bound to proceed, does not contemplate an answer or a cross-complaint except to the extent of alleging damages to land not taken. Smith v. Chicago & W. I. R. Co., 105 Ill. 511; Johnson v. Freeport & M. R. Ry. Co., 111 Ill. 413; Chicago R. I. & P. Ry. Co. v. City of Chicago, 143 Ill. 641, 32 N.E. 178. The courts have reached this conclusion upon the reasoning that since condemnation is entirely statutory and since the statute makes no provision for the filing of an answer, the legislature contemplated the filing of none and none is permissible. Consequently defendants could not proceed by cross complaint, in an unauthorized answer, for injunction against government officials who were not parties to the suit. Scott v. Donald, 165 U.S. 107, 117, 17 S.Ct. 262, 41 L.Ed. 648; Chicago, M. St. P. & P. R. Co. v. Adams County, 9 Cir., 72 F.2d 816, 822. Nor, if such officials be considered representative of the government, could defendants maintain the cross complaint as a suit against the United States without the latter's consent. Illinois Cent. R. Co. v. Public Utilities Comm., 245 U.S. 493, 504, 38 S.Ct. 170, 62 L.Ed. 425; Hill v. United States, 149 U.S. 593, 13 S.Ct. 1011, 37 L.Ed. 862; Oregon v. Hitchcock, 202 U.S. 60, 26 S.Ct. 568, 50 L.Ed. 935. Their remedy lies in the Court of Claims. Judicial Code, sec. 267, 36 Stat. 1163, 28 U.S.C. § 384, 28 U.S.C.A. § 384; Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637. Because the injunction could not have been allowed, it was unnecessary to convene a court of three judges. Oklahoma Gas & Electric Co. v. Oklahoma Packing Co., 292 U.S. 386, at page 391, 54 S.Ct. 732, 78 L.Ed. 1318.

 Defendants urge that the court improperly excluded evidence offered by

them when the motion to dismiss was heard. We have discussed the rulings attacked in so far as they relate to alleged attempts to purchase, to the necessity of a fee simple title and to evidence of flooding the land, said to destroy a view by the jury. The suggestion that the Government was taking and damaging more land than it had described in the condemnation proceeding, was subject matter to be presented, not on motion to dismiss, but upon trial by jury. Furthermore motions to dismiss, under the Illinois Practice Act, admit the truth of all facts well pleaded. Scully v. Hallihan, 365 Ill. 185, 6 N.E.2d 176. Consequently the hearing of evidence was beyond its proper scope.

It may be that the District Court treated the motion to dismiss as a motion to set aside the order of immediate possession in which case the pertinent facts might be material. But, treated as such, the propriety of the order and of the denial of the prayer for injunction have become moot questions. The dam has been completed, the timber has been removed, the lands have been flooded and any damage that might have been avoided at that time has now been consummated. The parties' remedy must be other than by suit for injunction. In cases such as this, if the acts complained of had been actionable, it would have been necessary to retain jurisdiction to assess damages, but here the damages have been assessed and all questions raised as to the interlocutory orders are moot. Wingert v. First National Bank, 223 U.S. 670, 32 S.Ct. 391, 56 L.Ed. 605; Mulford v. Farmers' Reservoir & Irrigation Co., 62 Colo. 167, 170, 161 P. 301; Northwestern Light & Power Co. v. Town of Milford, 8 Cir., 82 F.2d 45; Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293.

Complaint is made that the court permitted the plaintiff to amend its petition so that it might include a reference to the Act of August 26, 1937, 50 Stat. 844, which constituted a modification of the upper Mississippi nine-foot channel project. Obviously this did not pertain to the present taking and the amendment should not have been permitted, but it did not injure defendants, for it was mere surplusage.

Defendants complain of the court's disposition of their motion to make the petition more certain and definite. An examination of the record discloses that the court granted an order substantially as requested by defendants. It denied their request in so far as it involved the levels on the Mississippi River at points other than the dam; but as this information was not relevant or material to the issue involved it was not error to refuse its production.

Defendants earnestly insist that they were deprived of a trial by a proper jury in that there were not names of 300 persons in the jury box qualified to serve; in that the court improperly issued a special venire and in that those summoned by the marshal in pursuance thereof were not bystanders.

In 28 U.S.C. § 412, 28 U.S.C.A. § 412, it is provided that jurors must be drawn from a box containing the names of not less than 300 persons possessing the qualifications prescribed. The box contained the names of 358 persons and defendants, on the motion for new trial, attempted to show that not all of them were qualified to serve as jurors. But there was no offer of proof that the disqualified persons, if any there were, were sufficient to reduce the qualified number below 300. The record, therefore, is silent as to any failure to have in the box names of 300 qualified jurors and as to any offer to prove that fact. We cannot interpolate a defect in the record and hold that the list in the box was totally invalid, even if it included some disqualified persons. Pullman's Palace-Car Co. v. Harkins, 3 Cir., 55 F. 932, 935; McNichol v. United States, 6 Cir., 9 F.2d 623.

The court issued an order to the marshal for a special venire of five men, under 28 U.S.C. § 417, 28 U.S.C.A. § 417, which provides that, when from challenges or otherwise, there is not a petit jury, the marshal, by order of the court, may return jurymen from bystanders sufficient to complete the panel. It appears that the trial judge had excused several of the summoned jurors, as a result of which action the panel had been reduced to nineteen persons. As to the action of the court in so doing, there can be no basis for complaint by defendants. Passing upon applications for excuse is a matter for the judge in the exercise of his discretion. Having excused these jurors, the trial court

issued an order for five additional jurymen without naming them. It does not appear how the men summoned were found or in what manner they were served, but they were ordered produced in compliance with the statute in order that sufficient veniremen might be on hand. This, the court may always do, in the interest of saving time. It may issue a special venire in anticipation that the regular venire is likely to be exhausted. Such is not hand picking jurors; rather they are selected and summoned by the duly authorized officer, the marshal. Cravens v. United States, 8 Cir., 62 F.2d 261, 269, certiorari denied 289 U.S. 733, 53 S.Ct. 594, 77 L.Ed. 1481.

■■■■ Defendants did request at the hearing on the motion for new trial, a continuance in order to summon the marshal to testify as to the manner of serving these additional jurors. This, the court denied. Again it was a matter of discretion. Defendants should have been prepared on their motion for new trial, if they desired to offer evidence, to present the same. The process of the court for that purpose was open to them and nothing appears in this record to justify a conclusion that the court committed error in this respect. Furthermore, defendants at that time made no offer as to what they expected to prove by the marshal. Apparently the request for a continuance to produce him was merely an effort to fish for evidence. The imputations of unfairness are wholly unsupported. Again, even if defendants had offered to prove that persons summoned were not bystanders but were persons called from their places of business, as soon as they came into court they became bystanders within the meaning of the statute. Cravens v. United States, 8 Cir., 62 F.2d 261.

■■■■ A complete answer to the defendants' position with regard to the venire exists in the well known rule that errors in the manner of drawing a jury must be presented by challenge to the array before, or at the latest, at the time of the examination of the jury. United States v. Loughery, C.C.E.D.N.Y., 1876, 26 Fed.Cas. 998, No. 15631; Veer v. Hagemann, 334 Ill. 23, 28, 165 N.E. 175; People v. Williams, 309 Ill. 492, 496, 141 N.E. 296; St. Louis & O. R. Co. v. Union Trust & Savings Bank, 209 Ill. 457, 70 N.E. 651; People v. Dun-can, 261 Ill. 339, 343, 103 N.E. 1043; Bruen v. People, 206 Ill. 417, 423, 69 N.E. 24; cf. Kohl v. Lehlback, 160 U.S. 293, 16 S. Ct. 304, 40 L.Ed. 432; Zito v. United States, 7 Cir., 64 F.2d 772; Williams v. United States, 6 Cir., 3 F.2d 933, 935; Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297, 301; Turner v. United States, 5 Cir., 66 F. 280, 285. The complaining party must be diligent; he must call the irregularity to the court immediately. His failure so to do is fatal to his challenge; he cannot thereafter present to the court an objection that might have been earlier discovered and seasonably presented. Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297. Here defendants' counsel knew of the conditions surrounding the empaneling of the jury at the time of the selection. A member of the special venire, in his answer to questions, disclosed that he had been called on the special venire, but the only objection made to his acceptance was that he was not a freeholder and was, therefore, ineligible, a ground not justified. Thereupon the defendants accepted the jury, without any peremptory challenge. The record discloses no prejudice or injury to defendants. And the charges of defendants are vague and uncertain in this respect. Courts do not reverse in such a situation, unless the record discloses that the party complaining was substantially prejudiced.

■■■■ Nor was it necessary under the constitution or statutes of the State of Illinois that the jury be composed of freeholders. Hercules Iron Works v. Elgin J. & E. Ry. Co., 141 Ill. 491, 496, 30 N.E. 1050; Indiana, I. & I. R. Co. v. Stauber, 185 Ill. 9, 14, 56 N.E. 1079; Davis v. Northwestern El. R. Co., 170 Ill. 595, 599, 48 N.E. 1058; Kerwin v. People, 96 Ill. 206. And there is no such requirement in the Federal statute. Franzen v. Chicago, M. & St. P. R. Co., 7 Cir., 278 F. 370, 372. And it was not error upon the part of the court to refuse defendants' counsel to accompany the jury upon its view. Regulation of such view has always been within the discretion of the trial court.

Defendants' contention that it was not permitted to cross-examine the witnesses with regard to soil, soil drainage and the crops produced is not borne out by the record.

■ The insistence that the court erred in excluding evidence in regard to money value of past or future profits is ill founded. The material question was the fair cash market value of the land. Past profits and probable future profits are too conjectural to furnish any basis for determination of value. Jacksonville & S. E. Ry. Co. v. Walsh, 106 Ill. 253, 256; De Buol v. Freeport & M. R. Ry. Co., 111 Ill. 499; Forest Preserve District v. Hahn, 341 Ill. 599, 173 N.E. 763; River Park District v. Brand, 327 Ill. 294, 158 N.E. 687; Hamilton v. Pittsburg B. & L. E. Railroad Co., 190 Pa. 51, 42 A. 369, 51 L.R.A. 319. Likewise the value of timber growing upon the land was immaterial. The test is the value of the real estate as a whole and separate valuation of the timber would necessitate another valuation of the land thereof. All of the facts and circumstances bearing upon the condition and nature of the land as a whole and its possible use are proper as elements bearing upon value, but separate appraisements of the different elements constituting the whole are improper. Forest Preserve Dist. v. Caraher, 299 Ill. 11, 132 N.E. 211; Morton Butler Timber Co. v. United States, 6 Cir., 91 F. 2d 884; Reading & P. R. Co. v. Balthaser, 119 Pa. 472, 13 A. 294; semble Atlanta Terra Cotta Co. v. Georgia Ry. & El. Co., 132 Ga. 537, 64 S.E. 563; Department of Public Works and Buildings v. Hubbard, 363 Ill. 99, 1 N.E.2d 383.

■ Evidence of sale of similar land was admissible. Franzen v. Chicago, M. & St. P. R. Co., 7 Cir., 278 F. 370; United States v. Nickerson, 1 Cir., 2 F.2d 502; Chicago & W. I. R. R. Co. v. Heidenreich, 254 Ill. 231, 98 N.E. 567, Ann.Cas.1913C, 266. Defendants insist that it was not shown that the seller was acting free of financial duress. The record indicates that the sale, evidence of which was received, was voluntary. If it was not, the defendants had adequate opportunity to show the contrary. The weight to be given the evidence was for the jury and defendants had a right to offer any evidence obtainable in that respect, and the burden was upon them to do so. Lanquist v. Chicago, 200 Ill. 69, 65 N.E. 681; Cobb v. Boston, 112 Mass. 181, 183; Sawyer v. Boston, 144 Mass. 470, 471, 11 N.E. 711. Thus in O'-Malley v. Commonwealth, 182 Mass. 196, 198, 65 N.E. 30, 31, Mr. Chief Justice Holmes said: "An exception was taken to the admission of a sale to the metropolitan water board. * * * But the exceptions show none of the circumstances,—nothing beyond the bare fact of a sale. We cannot say merely because of the name of the purchaser that the sale was not a fair transaction in the market rather than a compulsory settlement."

Evidence of the fair cash market value is always proper. The statute requires the money equivalent of the property taken. Seaboard Air Line Ry. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014. That is the fair market value. United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 81, 33 S.Ct. 667, 57 L. Ed. 1063; Vogelstein & Co. v. United States, 262 U.S. 337, 43 S.Ct. 564, 67 L.Ed. 1012.

■ Complaint is made that Phelps, a witness for defendants, was not permitted to give testimony as to the value of the land. Such was the ruling of the court when he was first placed upon the stand. Later, after he had seen the land, he was permitted to give the testimony. Hence, the error if any, was cured.

■ Defendants offered in evidence a government document and called one of the government witnesses to interpret it. For some strange reason the witness claimed to be exempt from testifying as a government employee and the court sustained the claim. There was no basis for it and its approval was erroneous. But the testimony sought to be introduced by Zebas was easily procurable through another witness Towl, subpoenaed by defendants. And the testimony at first refused was later obtained from Zebas himself, in so far as it was material. The error was thereby cured.

■ The map prepared by Zebas from information furnished by his field men was properly received as a government record. It was shown that the chart was compiled from records of the United States' engineer; that the witness was in charge of the office and that the men who furnished the information were working under his supervision and control. The office was a department of the Government. The court properly admitted it as a government doc-

398

ument. Chesapeake & Delaware Canal Co. v. United States, 3 Cir., 240 F. 903, 907, affirmed 250 U.S. 123, 39 S.Ct. 407, 63 L. Ed. 889; Holt v. United States, 218 U. S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann. Cas. 1138.

 It is insisted that the court erred in instructing the jury that for damages caused by raising the water of the river to the ordinary high water mark, the government was not liable. There is no taking from a riparian owner by the Government when water is raised to the ordinary highwater mark for the purpose of improving navigation; whatever rights the owner possesses below ordinary highwater mark are subordinate to the rights of the public. Willink v. United States, 240 U. S. 572, 580, 36 S.Ct. 422, 60 L.Ed. 808; Barr v. Spalding, D.C., W.D.Ky., 1928, 46 F.2d 798, 799, 800. Consequently nothing is due for impairment or use by the United States in the improvement of navigation of property within or over the bed of its navigable waters. Intangible riparian rights are subject to the same servitude. Under the Fifth Amendment mere damage to land not taken is not compensable as an act under the power of eminent domain. Bedford v. United States, 192 U.S. 217, 224, 24 S.Ct. 238, 48 L.Ed. 414; Scranton v. Wheeler, 179 U.S. 141, 21 S.Ct. 48, 45 L. Ed. 146; Gibson v. United States, 166 U. S. 269, 17 S.Ct. 578, 41 L.Ed. 996. Whatever defendants' remedy may be in other forms of action, an interference with the subsurface drainage is not within taking under the eminent domain power. Bedford v. United States, 192 U.S. 217, 224, 24 S.Ct. 238, 48 L.Ed. 414; Christman v. United States, 7 Cir., 74 F.2d 112; Tompkins v. United States, 45 Ct.Cl. 66, 85, 86; Walls v. United States, 44 Ct.Cl. 482.

 We have examined instructions requested by defendants and find no error in their refusal. Nor was the form of the verdict improper. The Illinois statute does not require separate findings as to compensation for land taken and as to damages to other land not taken. Wabash, St. L. & P. Ry. Co. v. McDougall, 126 Ill. 111, 121, 18 N.E. 291, 1 L.R.A. 207, 9 Am. St.Rep. 539.

We have examined all the multitudinous assignments of error of defendants, including those not herein specifically mentioned. We conclude there is no reversible error in the record and the judgment is affirmed.